**ORDERED.**

Dated: February 18, 2026

_____
Jacob A. Brown
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
www.flmb.uscourts.gov

In re:                                                          Case No. 3:24-bk-793-JAB

ADRIAN JEVON SHUMAN,
                                                                Chapter 13
    Debtor.
_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This Chapter 13 Bankruptcy Case came before the Court on Debtor's Objection to Claim 2 of State National Companies (the "Objection")[1] and State National Companies' Response to the Objection (the "Response").[2] On November 19, 2025, the Court conducted a hearing on the Objection (the "Hearing") and directed the parties to file post-hearing memoranda. Upon the applicable facts and relevant law,

---

[1] Doc. 48.
[2] Doc. 51.

the Court finds it appropriate to sustain the Objection. The Court makes the following Findings of Fact and Conclusions of Law.[3]

## Findings of Fact

On February 23, 2022, Vystar Credit Union ("Vystar") loaned Adrian Jevon Shuman ("Shuman") $40,781.80 to finance the purchase of a 2016 Cadillac CT6 (the "Vehicle") in exchange for which Vystar was granted a security interest in the Vehicle. Previously, on November 16, 2020, Vystar had entered into a Vendors Single Interest Blanket Policy (the "Insurance Policy") with State National Companies ("SNC").[4] The Insurance Policy provided coverage to Vystar of up to $100,000 for each financed private passenger automobile. In August 2023, Shuman stopped making payments to Vystar, and in turn, Vystar filed a claim with SNC as to the Insurance Policy. In December 2023, SNC paid Vystar $29,050 pursuant to the Insurance Policy. In consideration thereof, Vystar assigned its lien rights in the Vehicle to SNC.

On March 20, 2024 ("the Petition Date"), Shuman filed this Chapter 13 Bankruptcy Case.[5] On March 28, 2024, SNC filed a secured proof of claim ("Claim 2") for $27,075 based on the assignment of lien from Vystar to SNC. On April 3, 2024,

---

[3] *See* Fed. R. Bankr. P. 7052.

[4] Single interest insurance protects the interests of a lender by covering damage or loss to a loan's underlying asset. Blanket coverage, which offers a lender coverage for its entire consumer loan portfolio, reduces the lender's administrative costs because it eliminates the necessity of the lender having to keep track of individual policies. Skip account protection reimburses the lender for the expense of tracking down a borrower who has defaulted. *See* https://www.investopedia.com/terms/s/single-interest-insurance.asp.

[5] Doc. 1.

Shuman objected to Claim 2, asserting that it should be disallowed because no supporting documents were attached to SNC's proof of claim (the "SNC Claim Objection").[6] The SNC Claim Objection contained a bolded negative notice legend that clearly advised interested parties, including SNC, to respond within thirty days, failing which the Court could grant the relief requested without further notice or hearing.[7] SNC did not file a response to the SNC Claim Objection, and, on May 8, 2024, the Court entered an order sustaining the objection and disallowing SNC's claim ("Order Disallowing Claim 2").[8] SNC did not seek reconsideration of the Order Disallowing Claim 2. The Court also notes that SNC was clearly aware of this bankruptcy case as of at least March 28, 2024 and has never asserted in any filing with the Court that it did not receive notice of any activity in this Bankruptcy Case.

On April 17 2024, Vystar filed an unsecured proof of claim ("Claim 9") for $11,317.38 and attached documentation related to its financing of the Vehicle. On June 10, 2024, Shuman filed an objection to Claim 9, seeking to have it treated as a secured claim.[9] By Order dated July 15, 2024, the Court sustained Shuman's Objection to Claim 9, allowing it as a secured claim.[10] Shuman, by seeking to have Vystar treated as secured, rather than unsecured, did Vystar, and in turn SNC, a big favor and

---

[6] Doc. 12. Claim 2 did in fact include supporting documentation evidencing SNC's lien rights in the Vehicle.
[7] The SNC Claim Objection was served upon the individual who filed Claim 2 on behalf of SNC at the address provided in Claim 2.
[8] Doc. 16. The Order Disallowing Claim 2 was served upon the individual who filed Claim 2 at the address provided in Claim 2.
[9] Doc. 25.
[10] Doc. 27.

provided for payment in full of the $11,317.38 under Claim 9. Had Shuman not taken such action, Vystar would have been treated as an unsecured creditor receiving approximately $2,100.

Prior to the confirmation hearing on October 1, 2024, Shuman filed an Amended Chapter 13 Plan[11] and a Second Amended Chapter 13 Plan[12] (collectively, the "Amended Plans").[13] Neither of the Amended Plans made mention of SNC. Despite SNC's claim having been disallowed and Shuman's Second Amended Chapter 13 Plan providing for no payments to SNC, SNC did not file an objection to the Plan and did not appear at the confirmation hearing.

On October 23, 2024, the Court entered an Order Confirming Plan ("the Confirmation Order").[14] The Confirmation Order indicated that Claim 2 was filed as a secured claim in the amount of $27,075 but had been disallowed and would receive no payment in the Chapter 13 plan.[15] The Confirmation Order treated Claim 9 as a secured claim for $11,317.48 and provided for payments to Vystar in an amount totaling $12,506.16 ($11,317.38 plus interest)[16] over the life of the plan.[17] SNC, again

---

[11] Doc. 15.
[12] Doc. 26.
[13] Both Plans were served upon State National at the address provided in Claim 2.
[14] Doc. 33. The Confirmation Order was served upon SNC at the address provided in Claim 2.
[15] *Id.*, Ex. A.
[16] The Confirmation Order provided for payments to Vystar of $182.46 for months 1-12 of the Plan and $214.93 for months 13-60 of the Plan.
[17] *Id.,* Ex. A.

4

having notice of activity in this Bankruptcy Case for approximately seven months, did not seek reconsideration of the Confirmation Order.

In January 2025, Shuman filed a Modified Chapter 13 Plan[18] and a Motion to Modify Confirmed Chapter 13 Plan (the "Motion to Modify"),[19] asserting that SNC had provided documentation that it, instead of Vystar, had a security interest in the Vehicle and that such documentation was attached to Claim 2. The Modified Plan proposed to pay $182.26 to Vystar for months 1-10 of the plan, $182.26 to SNC for months 11 and 12 of the Plan, and $214.93 to SNC for months 13-60 of the Plan. The Trustee objected to the Motion to Modify, asserting that the Modified Plan did not properly provide for the "claims of and Orders related to State National Companies and Vystar Credit Union."[20]

On May 21, 2025, the Court conducted a hearing on the Motion to Modify. SNC did not appear at this hearing. On June 20, 2025, the Court entered an Interim Order Granting Debtor's Motion to Modify Confirmed Plan and Scheduling a Continued Hearing on July 23, 2025 (the "Interim Order").[21] The Interim Order gave SNC thirty days to file a proof of claim. SNC, however, failed to file a another[22] proof of claim.

---

[18] Doc. 36.
[19] Doc. 37.
[20] Doc. 38.
[21] Doc. 42. The Interim Order was served upon SNC at the address provided in Claim 2.
[22] As the Court previously noted, SNC's proof of claim 2 was disallowed by order dated May 8, 2024 based upon SNC's failure to respond to the SNC Claim Objection.

On July 23, 2025, the Court conducted another hearing on the Motion to Modify. SNC's attorney did not appear at this hearing. Shuman's attorney appeared and noted the following: 1) Shuman previously objected to Claim 2 because he did not know what Claim 2 represented; and 2) Shuman's attorney followed up two or three times with SNC's attorney regarding filing a proof of claim (as directed by the Court) and was told a proof of claim would be filed. Shuman's attorney also indicated that Vystar refused to accept money from the Trustee because it no longer held a lien on the Vehicle and the Trustee did not know to whom to make the payment based upon the claims filed in the case. The Court's understanding at the hearing was that the modification would change the recipient for purposes of directing to whom payment should be made and where payment should be sent, *but would not change the amount of the payment*, which was defined in the October 23, 2024 Confirmation Order almost nine months prior.[23] The Court granted the Motion to Modify and directed that SNC be substituted in the place of Vystar as the rightful lien holder and treated as the secured creditor. The Court directed the parties to work together to prepare a proposed order.

For reasons which are not clear to the Court, the Chapter 13 Trustee did not submit an order memorializing the Court's ruling until almost two months later on September 19, 2025. The Court entered the Order Granting Debtor's Motion to

---

[23] In response to the Court's question to Shuman's counsel "State National is who you assert and believe is the rightful lien holder on the vehicle and should be getting the payments that are currently set up to be made to Vystar under the plan," Shuman's counsel responded "correct."

Modify Confirmed Chapter 13 Plan (the "Order Modifying Plan") on September 22, 2025.[24] The Order Modifying Plan provided:

> Proof of Claim 2 of [SNC] shall be an allowed claim and be deemed and treated as a secured claim and will receive payments of $182.46 for months 1-12 and $214.93 for months 13-60 on the 2016 Cadillac CT6 per the originally filed proof of claim dated March 28, 2024.[25] Debtor(s) shall have 14 days from the date of this Order to file an objection to Claim(s) # 2 of [SNC] or in the alternative to obtain an amended claim reflecting those amounts being paid in the plan confirmed by this Order. If Debtor(s) fail to object to the claim or obtain an amended claim within 14 days of the date of this Order, then the claim shall be allowed as filed and the plan amended to provide for payment in full.[26]

The Order Modifying Plan failed to accurately reflect the Court's ruling from the July 2025 hearing. The Court simply directed that the plan be modified to provide for monthly plan payments to SNC instead of Vystar. The Court's ruling at the July 2025 hearing did *not* provide for Claim 2 to be treated as a secured claim in the amount of SNC's originally filed proof of claim.

On August 29, 2025, Shuman filed the Objection, stating "[t]he Debtor would show that the balance of $27,075.00 is excessive based on the amount paid to VyStar Credit Union. The balance allowed should be $11,317.48." On October 2, 2025, almost a year after the entry of the Confirmation Order, SNC filed the Response. By the Response, SNC contends Shuman is confused about the transaction between SNC and Vystar and that, because the Vehicle was purchased within 910 days prior to the

---

[24] Doc. 49.
[25] The payments in the Plan and Modified Plan totaled $12,506.16, calculated by adding the $11,317.48 set forth in Claim 9 filed by Vystar, with interest. The payments were not sufficient to pay the $27,075 set forth in Claim 2 filed by SNC.
[26] *Id.*

7

filing of the bankruptcy case, it must be paid in full as provided in 11 U.S.C. § 1325(a)(9)(the "Hanging Paragraph").[27] The Response was SNC's first filing in this Bankruptcy Case since it filed Claim 2 on March 28, 2024.

On December 18, 2025, SNC filed its Post-Trial Brief in Opposition to the Objection,[28] and on December 19, 2025, Shuman filed his Post-Trial Memorandum in Support of the Objection.[29]

## Conclusions of Law

Shuman argues that SNC is not a purchase money security-interest creditor of Shuman, and he is therefore not precluded by the Hanging Paragraph from reducing Claim 2 to the value of the Vehicle. Alternatively, Shuman argues that the Confirmation Order and the Order Modifying Plan valued the collateral of Vystar and SNC at $11,317.48 and that any objection by SNC to Shuman's valuation of its claim is precluded by 11 U.S.C. § 1327. SNC argues that the plain meaning of the Hanging Paragraph requires Shuman to pay the full amount of Claim 2 but did not address Shuman's § 1327 argument.

---

[27] The Hanging Paragraph provides:

> For purposes of paragraph (5) [of § 1325(a)], section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

[28] Doc. 66.
[29] Doc. 67.

Section 1327(a) of the Bankruptcy Code provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."[30] "This policy is so strong that a 'creditor may not ignore the confirmation process … A creditor who disregards a procedurally proper and plain notice that its interests are in jeopardy does so at its own risk.'"[31] The binding effect of § 1327 applies to all issues that were or could have been litigated by the parties.[32] Among these issues is the amount of a secured claim, and the value of a secured claim is fixed as of the effective date of the plan.[33]

The Supreme Court has ruled that even a confirmed Chapter 13 plan that is erroneously entered in contravention of the Bankruptcy Code is binding if the affected creditor had adequate notice but failed to timely object or appeal.[34] In *Espinosa*, the Debtor filed a Chapter 13 plan that proposed to pay the principal owed on his student loan debt during the life of the plan, after which the interest would be discharged. In response to receiving a copy of the chapter 13 plan, the creditor filed a proof of claim for the total debt owed but did not object to the plan or object to the debtor's failure to file an adversary proceeding to discharge the debt. The bankruptcy court confirmed

---

[30] 11 U.S.C. § 1327.
[31] *In re McLemore*, 426 B.R. 728, 735 (Bankr. S.D. Ohio 2010) (quoting *Factors Funding Co. v. Fili*, 257 B.R. 370, 374 (1st Cir. 2001)).
[32] *In re Gonzalez*, 832 F.2d 1251, 1258 (11th Cir. 2016).
[33] *In re Meeks*, 327 B.R. 856, 859 (Bankr. M.D. Fla. 1999).
[34] *United Student Aid Funds, Inc. v. Espinosa (In re Espinosa)*, 599 U.S. 260, 275 (2010).

the plan without the filing of an adversary proceeding or a finding of undue hardship as required by 11 U.S.C. § 523(a)(8).

The *Espinosa* Debtor completed the payments as required by the plan, and the bankruptcy court discharged the interest. Several years later, the creditor filed a motion under Fed.R.Civ.P. 60(b)(4) seeking to set aside the confirmation order as void on the basis that: 1) the plan's provision which discharged the interest was inconsistent with § 523)(a)(8)'s requirement that a court find undue hardship before discharging a student loan; and 2) its due process rights were violated since it did not receive adequate notice of the proposed discharge because the debtor failed to commence an adversary proceeding.

The bankruptcy court denied the motion, and the district court reversed. The Ninth Circuit sided with the bankruptcy court, finding that the judgment was not void. The Supreme Court rejected the creditor's due process argument, finding that the creditor's actual notice of the plan "more than satisfied" its due process rights.[35] The Court found that while the bankruptcy court committed a legal error by confirming the plan without a finding of undue hardship, the confirmation order was enforceable and binding because the creditor had notice of the error and failed to object or timely appeal.[36] The Court noted that Rule 60(b)(4) does not provide "a license for litigants to sleep on their rights….Where, as here, a party is notified of a plan's contents and fails to object to confirmation of the plan before the appeal expires, that party has been

---

[35] *Id.* at 272.
[36] *Id.* at 275.

afforded a full and fair opportunity to litigate, and the party's failure to avail itself of that opportunity will not justify Rule 60(b)(4) relief."[37]

Section 1329 sets forth the limited circumstances under which a plan may be modified[38] and permits only the debtor, the trustee, or an unsecured creditor to seek modification of a confirmed plan. A secured creditor may not seek modification under § 1329. Section 1327 precludes modification of a confirmed plan under § 1329 to address issues that were or could have been decided at the time the plan was originally confirmed.[39] While a debtor can alter the amount of their payment on a claim to accelerate or reduce the rate at which a claim is paid, § 1329 does not permit a debtor to modify the amount of an allowed secured claim.[40]

SNC's objection to Shuman's valuation of its claim is clearly precluded by the binding effect of the Confirmation Order as mandated by § 1327.[41] SNC had numerous opportunities to protect its rights but failed to do so. First, SNC failed to file a response

---

[37] *Id.* at 277.
[38] Section 1329(a) provides:
(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to--
    (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
    (2) extend or reduce the time for such payments;
    (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or

[39] *In re Storey*, 392 B.R. 266, 272 (B.A.P. 6th Cir. 2008).
[40] *Meeks*, 237 B.R. at 856.
[41] Had SNC timely acted to preserve its claim rights, it appears SNC would have been entitled to secured creditor treatment on the $27,075 set forth in Claim 2. That said, the Court, having found § 1327 applies, need not address that issue here.

to the SNC Claim Objection. Second, SNC failed to seek reconsideration of the Order Disallowing its claim. Third, SNC failed to object to not being included in the Amended Plans. Fourth, SNC failed to appear at the October 1, 2024 confirmation hearing. Finally, SNC failed to timely seek reconsideration of the Confirmation Order. Like the creditor in *Espinosa*, SNC essentially slept on its rights during the pendency of this Bankruptcy Case. SNC was notified of the proposed disallowance of Claim 2, the disallowance of Claim 2, and its treatment in the Plan but failed to take any action to protect its interests. Its failure to avail itself of a full and fair opportunity to litigate does not justify relief from the Confirmation Order by virtue of modification under § 1329.[42]

## Conclusion

The Confirmation Order and the Order Modifying Plan valued the collateral of Vystar and SNC at $11,317.48, and SNC's objection to Shuman's valuation of its claim is precluded by 11 U.S.C. § 1327. The Court will therefore sustain Shuman's Objection to Claim 2 and enter a separate order consistent with these Findings of Fact and Conclusions of Law.

---

[42] *See In re Winn-Dixie Stores, Inc.*, 381 B.R. 804, 809–10 (Bankr. M.D. Fla. 2008), *aff'd in part*, 414 B.R. 764 (M.D. Fla. 2009), *aff'd*, 639 F.3d 1053 (11th Cir. 2011) "[A] creditor cannot reasonably expect to sit on its rights throughout the process leading up to confirmation, then argue that it is entitled to relief post-confirmation, without consideration to the specified terms of the confirmed plan. Just as the W or L in the score box at a sporting event determines a team's standing, a creditor's standing and rights, unless preserved, are determined by the terms of the confirmed plan."

Attorney Bryan Mickler is directed to serve a copy of these Findings of Fact and Conclusions of Law on interested parties and to file a proof of service within 3 days of the entry of the order.